**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **No. 21-mj-50 (RMM)** |
| | : | |
| | : | |
| **JOHN EARLE SULLIVAN,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM**
**IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, John Earle Sullivan, be detained pending trial pursuant to 18 U.S.C. §§ 3148 and 3142(f)(2)(B) and (g). The defendant was a brazen, vocal participant in the disruption and disorder surrounding the events on January 6, 2021, at the U.S. Capitol. Since his release on stringent conditions on January 15, 2021, he has repeatedly flouted court-imposed conditions. The alleged violations prompted the magistrate judge in the arresting jurisdiction to convene a hearing earlier this week on February 1, 2021, at which she expressed serious concerns about the allegations, yet decided – in light of the defendant's imminent initial appearance in the District of Columbia – to defer resolution to this Court. This Court, with the matter now transferred and under its jurisdiction, should hold the defendant to account: The clear and convincing evidence from the defendant's own supervision officer is that the defendant has repeatedly attempted to circumvent fundamental conditions of his release, warranting revocation and demonstrating his

1

unwillingness to abide by any combination of conditions of release.    These violations only further underscore that there are serious risks that this defendant will obstruct or attempt to obstruct justice and that he continues to pose a recurring threat to the safety of the community – risks that cannot redressed by any combination of release conditions.

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented orally, be considered in the Court's determination regarding pre-trial detention.

## BACKGROUND

### Factual Background

Sullivan is the leader of an organization called Insurgence USA through which he organizes protests.    On January 7, 2021, the defendant participated in a voluntary interview with a Federal Bureau of Investigation Special Agent in Washington, D.C.    The defendant stated that he was in Washington, D.C. to attend and film the "Stop the Steal" March on January 6, 2021.    The defendant claimed to be an activist and journalist that filmed protests and riots, but admitted that he did not have any press credentials.

The defendant also stated that he was at the U.S. Capitol on January 6, 2021, when scores of individuals entered it.    The defendant stated he was wearing a ballistic vest and gas mask while there.    He showed the interviewing agent the ballistic vest.    He further stated that he entered the U.S. Capitol with others through a window that had been broken out.    The defendant stated he followed the crowd as the crowd pushed past U.S. Capitol Police and followed the crowd into the U.S. Capitol.

The defendant further stated that he had been present at the shooting of a woman within

2

the U.S. Capitol by a U.S. Capitol Police officer and that he had filmed the incident.   During the interview, the defendant showed the interviewing agent the footage he had taken, which the defendant stated he had uploaded to the Internet.   The footage showed the area immediately outside of the Speaker's Lobby within the U.S. Capitol, the hallway from which one can enter directly into the chamber of the U.S. House of Representatives.   The defendant also voluntarily provided two phone numbers and multiple social media accounts and identifiers, including a YouTube account username, JaydenX.

On January 9, 2021, the defendant voluntarily provided to law enforcement video footage that he stated that he recorded within the U.S. Capitol on January 6, 2021.   The defendant sent a link to law enforcement from a Google Photos account under the name "John Sullivan."   A portion of the video is publicly available on a Youtube channel attributed to "JaydenX."1   The defendant's voice can be heard narrating the video and speaking to other individuals and law enforcement officers.   At one point, the camera pans to a tactical vest and a gas mask being worn and held by the individual filming, which match the tactical vest and gas mask that the defendant showed law enforcement agents during a voluntary interview on January 11, 2021.



---

1  A portion of the video is also publicly available on a YouTube channel attributed to "JaydenX" here: https://www.youtube.com/watch?v=PfiS8MsfSF4&bpctr=1610480291.



Among other things, the video the defendant recorded and provided to law enforcement shows Sullivan filming at the front of a crowd as they pushed through police barriers on the west side of the U.S. Capitol.   At the first moment the crowd breaks through, Sullivan can be heard saying, "they're going in."   The video follows the crowd as they move toward the Capitol Building where Sullivan captured additional scenes of individuals breaking through police barriers:



After the crowd broke through the last barricade, and as Sullivan and the others approach the Capitol Building, Sullivan can be heard in the video saying at various points: "There are so many people. Let's go. This shit is ours! Fuck yeah," "We accomplished this shit. We did this together. Fuck yeah! We are all a part of this history," and "Let's burn this shit down."

Later, Sullivan's video includes footage of individuals climbing a wall to reach a plaza just

outside the Capitol Building entrance, as seen in the screenshot below.    As individuals are climbing the wall, Sullivan can be heard saying, "You guys are fucking savage.    Let's go!"



At one point, Sullivan can be heard telling one of the individuals climbing the wall to give Sullivan his hand as individuals in the crowd are calling to help people up the wall.

The video records Sullivan's entrance into the U.S. Capitol building through a broken window:



Sullivan, once inside the Capitol Building, roamed the building with other individuals who unlawfully entered.    During one of his interactions with others, Sullivan can be heard in the video saying, "We gotta get this shit burned."    At other times as he is walking through the Capitol, Sullivan can be heard saying, among other things, "it's our house motherfuckers" and "we are getting this shit."

5

In addition, several times during the video, Sullivan encounters law enforcement officers who are trying to prevent further advancement through the building by those who entered unlawfully.   In at least two encounters, Sullivan can be heard on the video arguing with the officers, telling them to stand down so that they do not get hurt.   Among other things, Sullivan can be heard telling officers, "you are putting yourself in harm's way," "the people have spoken," and "there are too many people, you gotta stand down, the people out there that tried to do that shit, they got hurt, I saw it, I'm caring about you."

At one point in the video, Sullivan enters an office within the U.S. Capitol, as seen in the screenshot below.   Once inside the office, Sullivan approaches a window, also seen in the screenshot below, and states, "We did this shit.    We took this shit."

While at the window, a knocking noise is heard off-screen.    The camera then pans to show more of the window and a broken pane can be seen that was not broken on Sullivan's approach to the window.    Sullivan can then be heard saying, "I broke it.    My bad, my apologies.    Well they already broke a window, so, you know, I didn't know I hit it that hard.    No one got that on camera."    Sullivan then exits the office.

Later, Sullivan can be heard saying, "I am ready bro.    I've been to too many riots.    I've been in so many riots."

At another point in the video, Sullivan joins a crowd trying to open doors to another part of the U.S. Capitol which are guarded by law enforcement officers, as seen in the screenshot below. Sullivan can be heard on the video telling other individuals in the crowd, "there's officers at the door."    Less than two minutes later, while officers are still at the doors and as others yell to break the glass windows in them with various objects, Sullivan can be heard saying, "Hey guys, I have

6

a knife. I have a knife.   Let me up."   Sullivan does not, however, ever make it to the doors.

When someone says something about how people are "getting arrested," he can be heard saying,

"don't worry, you'll be fine, it's only a little jail time… I do this all the time."



Eventually, individuals in the crowd outside the doors announce that the officers are

leaving and "giving us the building."   As the crowd begins to part so the officers can leave,

Sullivan can be heard saying, "Haul that motherfucker out this bitch."

At another time in the video, Sullivan is walking down a hallway in the U.S. Capitol with

a large group of people.   Sullivan pans to a closed door and can be heard saying, "Why don't we

go in there."   After someone hits against the door, Sullivan can be heard saying, "That's what

I'm sayin', break that shit."   Further down the hall, Sullivan can be heard saying, "It would be

fire if someone had revolutionary music and shit."

In the video, once Sullivan approaches the doorway to the Speaker's Lobby, where a

woman was eventually shot, Sullivan can be heard again saying, "I have a knife…. Let me through

I got a knife, I got a knife, I got a knife."   He can be heard telling one of the law enforcement

officers guarding the doors, as seen in the screenshot below, "We want you to go home.   I'm

recording and there's so many people and they're going to push their way up here.   Bro, I've seen

people out there get hurt.    I don't want to see you get hurt."



Eventually, the law enforcement officers begin to exit and individuals within the crowd move toward the doors.    As this is happening, Sullivan can be heard yelling after the officers, "I want you to go home," and then yelling, "Go!    Go!    Get this shit!"    Sullivan then films as others in the crowd try to break out the glass in the entryway door windows.    Shortly thereafter, the video includes footage of a female getting shot as she tries to enter through the window opening.

## **Procedural History**

On January 13, 2021, the defendant was charged by complaint with violations of 18 U.S.C. §§ 231(a)(3) & 2 (Civil Disorders); 18 U.S.C. § 1752(a) (Knowingly Entering or Remaining in a Restricted Building or Grounds without Lawful Authority); and 40 U.S.C. § 5104(e)(2) (Violent Entry and Disorderly Conduct on Capitol Grounds).

On January 15, 2021, at the defendant's initial appearance in the District of Utah, the government orally moved for a three-day hold pursuant to 18 U.S.C. § 3142(f)(2).    Magistrate Judge Daphne Oberg held that the "threshold conditions" under § 3142(f) had not been met to qualify for a detention hearing.    Exh. A at 1.    Addressing § 3142(f)(2)(B)'s requirement of a showing of a "serious risk the defendant will obstruct justice in the future," the judge emphasized

that such an inquiry is "forward-looking" and stated that the fact that the defendant allegedly appeared in a Utah state court proceeding via internet video conference while in Washington, D.C. and allegedly "might have incited others to resist police officers in a separate Oregon event" were insufficient to merit a detention hearing.   *Id.* at 4.

The defendant was ordered released.   His conditions of release included home detention; that the defendant "find new employment" and "no longer work for Insurgence USA"; that he be "monitored by the form of location monitoring technology, at the discretion of the pretrial services officer, and abide by all technology and program requirements"; and that he "participate in the United States Probation and Pretrial Services Office Computer and Internet Monitoring Program." From the bench, the judge underscored that the defendant was to have nothing to do with Insurgence USA beyond handling existing bank accounts or paying its taxes.   At the court's request, the government submitted the names of numerous social media websites and applications, including Twitter, believed to be used by the defendant to advance his activities.   In imposing the conditions, the judge warned the defendant that any violations would "not be taken lightly" and could result in detention.

On January 27, 2021, the defendant's supervision officer reported that the defendant had committed four violations of his release conditions on January 17, 18, 19 and 26, 2021, respectively.   The first two alleged violations involve the defendant's alleged logins to Twitter accounts @insurgenceusa, @realjaydenx, @activistjohn while the defendant had been prohibited from accessing enumerated social media websites, including Twitter; had been instructed by his supervision officer that he could use the Internet only under his father's supervision; had been admonished that he could use the Internet only for work or employment purposes; and had been

further admonished that he could do no work with or for Insurgence USA.   The third alleged violation involves the defendant's purchase of an Internet-capable phone in direct contravention of his supervision officer's instructions, and apparent attempt to seek out alternatives to Facebook – another prohibited platform – on the Internet.   The fourth alleged violation involves the defendant's January 26, 2021, appearance on "Infowars" for which he purportedly requested that Insurgence USA's website be specifically plugged on the show so that people could "follow" him and the organization.   During that Infowars interview, the defendant denied having any regrets about his participation in the January 6 events, stating that "I stand by my actions and what I do" and that "I am definitely not responsible for anything that took place that day."   The defendant also said, "I have my own group, Insurgence USA, but that's my company that I built for documenting these events."2

The magistrate judge in the District of Utah issued a summons.   At a hearing on February 1, 2021, the judge noted serious concerns about the violations.   She informed the defendant that his "picture changes just by nature of these allegations," noting that his release had been based on her "threshold" analysis and not based on any consideration of dangerousness or the risk of flight; now that he was alleged to have violated his conditions of release, such considerations were relevant under § 3148(b)(2)(A), which cross-references the "factors set forth in section 3142(g)."

However, acknowledging that the defendant's initial appearance in the District of Columbia was days away, the magistrate judge – at defense counsel's request, over the government's stated preference to address the violations immediately – decided to defer ruling for

---

2 The Infowars interview is available at
https://cantcensortruth.com/watch?id=6010cad9c155bf0e53d1675c

this Court's consideration.   The magistrate judge nonetheless scheduled a February 8, 2021, hearing in the District of Utah to address the violations if "for some reason" the initial appearance in the District of Columbia were not to proceed as anticipated.

The morning of the hearing, an email was sent from "John Sullivan" to "Insurgence USA Members" entitled "Pack The Courtroom."   The email provided the ZoomGov Meeting link, dial-in numbers, and information for the magistrate judge's hearing.   The body of the email stated, "They are trying to imprison me for crimes I did not commit at the United States Capitol…. Please show your support by packing the courtroom today."   Exh. B.

On February 3, 2021, a grand jury in the District of Columbia returned an indictment against the defendant on violations of 18 U.S.C. §§ 231(a)(3) & 2 (Civil Disorders); 18 U.S.C. § 1512(c)(2) & 2 (Obstruction of an Official Proceeding); 18 U.S.C. §§ 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds) and 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); and 40 U.S.C. §§ 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building) and 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).

## ARGUMENT

### Applicable Statutory Authority

Under 18 U.S.C. § 3148, detention is an available sanction for a "person who has been released … and who has violated a condition of his release."   Section 3148 expressly contemplates that, at least in some circumstances, the "judicial officer" to enter the order of revocation and detention may not be the same "judicial officer who ordered the release and whose order is alleged to have been violated."   *See* 18 U.S.C. § 3148(b) ("*To the extent practicable*, a

person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, *shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated*.").    The statute thus contemplates the very type of considerations of practicality and workability that make ample sense where, as here, the arresting district does not have jurisdiction over the offenses.    The magistrate judge's decision this week to give this Court the opportunity to consider the defendant's pretrial release violations, given this Court's imminent hearing date and obligation to review release conditions afresh, was reasonable and consistent with the statutory scheme.

Alternatively, this Court could also find a risk of obstructing justice sufficient to proceed to a detention hearing and the core consideration of whether, under § 3142(g), there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.    18 U.S.C. § 3142(f)(2) makes clear that the Court "*shall hold* a hearing … in a case, that involves … (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness or juror."

Here, the government respectfully disagrees with the finding by the magistrate judge in the District of Utah that the obstruction-of-justice threshold is not met, and in any event, in light of the apparent violations of his release conditions, that inquiry stands in a very different posture than it did on January 15.    The defendant is alleged to have willfully participated in a massive and momentous obstruction effort – an attempt to prevent the congressional certification of the results of a Presidential election.    The defendant has been indicted on two obstructive felonies under 18 U.S.C. §§ 1512(c)(2) and 231(a)(3) – the former involving obstruction of an official proceeding through lawless and unauthorized conduct, and the latter involving obstruction and interference

with the official duties of a law enforcement officer.    The defendant, according to his own video footage, apparently exhorted others to "burn this shit down," "break that shit," and – amid the smashing of the Speaker's Lobby doors – "Go!    Go!    Get this shit!"    He celebrated the breach of the Capitol as "revolutionary" "history."    He boasted of how "it's only a little jail time… I do this all the time."    He spoke of "[h]aul[ing]" officers out and sought to cajole others performing their official duties to "stand down" or "go home."    The assessment of risk, to be sure, is a forward-looking inquiry.    But any assessment of risk is necessarily informed by past actions, and here defendant has engaged in marked obstruction of both official proceedings and officers that reflects a brazen disrespect for the orderly administration of justice.

The defendant's apparent violations of his court-imposed release conditions provide even more pointed and compelling examples of his attempts to obstruct justice in this very case.    In fact, in his Infowars interview, the defendant, in discussing the issue of censorship, conversed freely about the myriad ways he has sought to circumvent other unspecified restrictions on his use of technology and social media platforms.[3]    In short, it is clear today that this defendant readily poses "a serious risk" of obstructing or attempting to obstruct justice pursuant to § 3142(f)(2)(B).

## Analysis

Under § 3148, the "judicial officer *shall* enter an order of revocation and detention" upon finding: (1) clear and convincing evidence that the person has violated any condition of release, and (2) that no conditions will assure that the person will not flee or pose a danger to the safety of

---

[3] The defendant says: "[T]he Twitter account that you saw that I had, JaydenX, that was, you know, my fourth account.    And Facebook, I was banned to the point on Facebook where, even if I use a VPN, and it was pinging my IP address out of China, I still couldn't create a new account. I could make, have a new phone number, a new email, and new name, use a different computer or phone; I actually bought another phone just to see if I could log into Facebook, still didn't work."

any other person or the community *or* that the person is unlikely to abide by any conditions of release. 18 U.S.C. § 3148(b)(1)-(2).   Under § 3142(g), moreover, the judicial officer shall similarly consider whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community – an inquiry that considers (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) his history and characteristics, and (4) the nature and seriousness of the danger posed by his release.   The government proffers the submission of the defendant's supervision officer through the Pretrial Services Agency as the requisite clear and convincing evidence of the violations, and submits that no combination of conditions will assure that the defendant will not pose a danger to the safety of the community.

In considering the nature and circumstances of the offense, what is particularly troubling about the defendant's depicted conduct on January 6 was its consistency throughout his extended foray through the Capitol Building.   Defendant positioned himself with a front seat to not one, but multiple confrontations with officers at multiple locations, and made consistently gleeful exhortations about burning and breaking things throughout the building and its grounds.

The weight of the evidence likewise favors detention.   The defendant admitted in voluntary interviews to his unlawful presence inside the Capitol and identified the video footage provided as his own.   His acts and statements are memorialized on video.

The defendant's history and characteristics further weigh in favor of detention.   On July 13, 2020, the defendant was charged with Rioting and Criminal Mischief by the local law enforcement authorities in Provo, Utah, based on his activities around a June 30, 2020, protest in which a civilian was shot and injured.   The case is still pending, but the fact the defendant was

charged with analogous offenses while on release in that matter underscores the recurring threat he poses to the community.   Moreover, the defendant has not merely run afoul of release conditions in this case; he has brazenly flouted them, in some cases flouting multiple conditions at once.   Several violations apparently came on the heels of detailed instructions to the contrary by his supervision officer.   The defendant's actions demonstrate an unwillingness to grapple with the seriousness of his charges and a contempt for the courts and its proceedings.

Finally, the defendant poses a danger to the community.   He breached the U.S. Capitol in tactical gear, wound his way to the front of numerous crowds and confrontations, and cheered and attempted to instigate others in committing criminal acts.   That even in hindsight he feels no remorse for his participation in the events that unfolded underscores the ongoing threat he poses to the community.

Given the above assessment, the government respectfully submits that there are no conditions that will assure that the defendant will not continue to pose a danger to the safety of any other person or the community, nor are there conditions that the defendant is likely to abide by.

## **CONCLUSION**

WHEREFORE, the United States respectfully requests that the Court grant the

15

government's motion to detain the defendant pending trial.

Respectfully submitted,

Michael R. Sherwin

Acting United States Attorney
New York Bar No. 4444188

By: _____
Candice C. Wong
D.C. Bar No. 990903
Candice.wong@usdoj.gov
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7849

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2021, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

                    _____
                    Candice C. Wong
                    Assistant United States Attorney

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| United States, | |
|---|---|
| Plaintiff, | **RELEASE ORDER** |
| v. | |
| John Earle Sullivan, | Case No. 2:21mj14-DAO |
| Defendant. | Magistrate Judge Daphne A. Oberg |

The court orders John Earle Sullivan's release in this case, based on a finding that the government did not establish a basis to hold a detention hearing. Mr. Sullivan made his initial appearance at a transfer hearing, conducted pursuant to Rule 5 of the Federal Rules of Criminal Procedure. Mr. Sullivan has been charged with federal offenses in Washington, D.C., and the Rule 5 hearing was held for purposes of transferring him there. At this hearing, the government made a verbal motion for detention and asked the court to continue Mr. Sullivan's detention hearing for three days, pursuant to 18 U.S.C. § 3142(f)(2). However, in this case, the government simply did not meet its burden of establishing any basis for a detention hearing. Because the court finds the threshold conditions under § 3142(f) have not been met, it cannot hold a detention hearing and, thus, cannot detain the defendant. Where the court cannot even hold a detention hearing, it certainly cannot delay such hearing on the government's motion—detaining the defendant all the while.

## LEGAL STANDARDS

The court can only hold a detention hearing (hence, can only detain a defendant), in cases which qualify for such a hearing under the Bail Reform Act, 18 U.S.C. §§ 3141–3150.  These cases are delineated in § 3142(f).  As noted by the Third Circuit, in *United States v. Himler*, the § 3142(f) "circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial."  797 F.2d 156, 160 (3d Cir. 1986).  "Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists."  *United States v. Ploof*, 851 F.2d 7, 10 –11 (1st Cir. 1988).  In other words, this is a "two-part inquiry."  *United States v. Gerkin*, 570 F. App'x 819, 820 (10th Cir. 2014) (unpublished).  "At the first step, the judicial officer must decide whether there is any basis to hold a detention hearing."  *Id.* at 821.  Only if the "government establishes a basis for a detention hearing," does the court move to the second step, where the government must show "'no condition or combination of conditions' that 'will reasonably assure the appearance of the person as required and the safety of any other person and the community.'"  *Id.* (quoting § 3142(f)).

## ANALYSIS

In this case, the government did not establish a basis for the detention hearing.  When asked at the hearing on what statutory grounds the case qualified for a detention hearing, the government first began to argue dangerousness to the community—a factor the court cannot even consider unless it first finds the case qualifies for a detention hearing.  The government then indicated the case qualified under § 3142(f)(2)(B).  Under this provision, a case qualifies for a detention hearing if the government establishes "a serious risk that such person will obstruct or

attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *Id.* This is a forward-looking inquiry, requiring a showing of a serious risk the defendant will obstruct justice in the future. Although the standard of proof under this section is not well-developed, some courts have determined that where the government seeks detention under this section, it must sustain its burden of proof by "clear and convincing evidence." *See United States v. Jones*, No. 99-1682, 1999 U.S. App. LEXIS 19916, *8 (1st Cir. Aug. 9, 1999) (unpublished); *United States v. Dodge*, 846 F. Supp. 181, 185 (D. Conn. 1994).

Obstruction of justice contemplates interference in the administration of justice. For instance, a common federal criminal statute prohibiting obstruction of justice requires proof that a person endeavored to influence a juror or officer of the court in the discharge of her duties through threats or force—or endeavored to influence the due administration of justice. 18 U.S.C. § 1503. Although the government obviously need not make any statutory showing of obstruction, this overall concept of obstruction is instructive.

In this case, the government made no attempt to argue there was a serious risk Mr. Sullivan would threaten, injure, or intimidate a prospective witness or juror—or attempt to do any of these things. Instead, the government focused on the risk of obstruction. In support of its claim, the government pointed to Mr. Sullivan's alleged behavior at a riot in Utah, wherein he allegedly threatened to harm another person, while kicking her car door, and incited others to block public roadways. Mr. Sullivan was charged for participating in this riot in the state system in Utah in July 2020; these events are not charged in the federal case. The government claimed Mr. Sullivan's attempt to obstruct justice could be shown by the fact that he appeared at his

hearing in this Utah state case via internet video conference, while he was in Washington, D.C., the day before the conduct alleged in this federal case. The government argued this act showed "reckless disregard for the courts." The government also argued Mr. Sullivan incited others to resist police officers' orders to disperse in an entirely separate, unrelated, incident in Oregon. The government offered no date for this Oregon event, only asserting that it occurred "while he was facing" the riot-related charges in Utah. The government indicated it was still attempting to obtain footage related to this alleged event.

The government's proffer simply fails to establish a *serious risk* Mr. Sullivan will obstruct justice or attempt to obstruct justice in the future. The fact that Mr. Sullivan allegedly appeared in a Utah state court proceeding via internet video conference—while in Washington, D.C., just before becoming involved in the federal offense alleged—does not stand as evidence of an attempt or willingness to obstruct justice. As Mr. Sullivan's counsel pointed out, all recent hearings in the state court system in Utah have been held via internet video conference, due to the coronavirus pandemic. The allegation that Mr. Sullivan might have incited others to resist police officers in a separate Oregon event adds little to inquiry. These allegations are insufficient to meet the government's burden of establishing § 3142(f)(2)(B) applies in this case, even by a preponderance of the evidence, let alone by clear and convincing evidence. And this was the only proffer made in support of this threshold question.

After the court declined to continue the detention hearing on the grounds that the government failed to first establish the case even qualified for a detention hearing, the government asked the court to delay its threshold determination, but to detain Mr. Sullivan during this delay. The court invited the government to provide any legal authority allowing the

temporary detention of a defendant when the threshold for holding a detention hearing has not been met. The government declined to do so. The government also asked the court to stay its release order. The court declined to do so, finding that where the government failed to even meet the threshold for a detention hearing, it could not detain Mr. Sullivan pending the government's appeal.

**CONCLUSION**

Where the government failed to establish, as a threshold matter, that this case meets the preconditions in § 3142(f) for holding a detention hearing, the court must release Mr. Sullivan. The release conditions can be found in a separate order. As stated at the hearing, the government is invited to file a detention motion in an attempt to meet its burden to establish the threshold for a detention hearing. In addition, defense counsel is invited to file any motion to amend conditions of release, if needed.

DATED this 15th day of January, 2021.

BY THE COURT:

_Daphne A. Oberg_
_____
Daphne A. Oberg
United States Magistrate Judge

# EXHIBIT B



**From:** John Sullivan <​███████████████​>
**Sent:** Monday, February 1, 2021 8:55 AM
**To:** Insurgence USA Members <​██████████████​>; Event List <​███████████████​>
**Subject:** Pack The Courtroom

> CAUTION: This email originated from outside of ██████ email system. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hey All,

I appreciate the continued support over the months today, Feb 1st, 2021. They are trying to imprison me for crimes I did not commit at the United States Capitol. I was there a Journalists expressing my 1st amendment rights to document the historic and tragic point in our nation's history. Help me fight for the rights of our freedom of the press.

### *Congress shall make no law respecting an establishment of religion, or abridging the freedom of speech, or the press;*

Please show your support by packing the courtroom today.


Join ZoomGov Meeting

https://www.zoomgov.com/j/16013932932?pwd=TkZCbFNnaENOTzU3N3JDWWd4████████


Meeting ID: 160 ██████

Passcode: ██████

One tap mobile

+166925452██████████████

+166921615██████████████


Dial by your location

    +1 669 254 ██████ US (San Jose)

    +1 669 216 ██████ US (San Jose)

+1 551 285 ███ US

+1 646 828 ███ US (New York)

Meeting ID: 160 ████

Passcode: ████

Thanks,

John Sullivan
Phone: ████
Email: ████
Website: ████
Insurgence USA: ████
--
You received this message because you are subscribed to the Google Groups "Event List" group.
To unsubscribe from this group and stop receiving emails from it, send an email to
████